**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 09-40089-02-JAR |
| | ) | |
| PRESTON M. GARDENHIRE, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on defendant's Motion to Suppress Illegally Seized

Evidence (Doc. 30), Motion to Dismiss Indictment (Doc. 31), and Motion for Bill of Particulars

(Doc. 29).  The Court held an evidentiary hearing on July 20, 2010, and the parties presented

evidence and argument on the motion to suppress.  The Court took the other two motions under

advisement after the parties submitted them on the briefs.  The Court has reviewed the evidence,

including the trooper patrol car video recording of the traffic stop, and considered the parties'

submissions.  For the reasons stated in detail below, defendant's motions are denied.

## I.      Background Facts

Around midnight on October 4, 2009, Kansas Highway Patrol Trooper Craig Phillips was

working a ruse check lane along Interstate 70 with a second officer.  Trooper Phillips was

working on the police service dog unit, where he had worked for more than five years with

Police Service Dog Cliff ("Cliff").  He worked for the Kansas Highway Patrol for nearly ten

years at the time of the events in this case.

As part of the ruse check lane, Trooper Phillips set up four signs along the interstate,

reading "Drug Check Lane Ahead" and "Drug Dog in Use," written in English and Spanish.  The

signs were placed just prior to Exit 322, which led to a desolate, rural, gravel road. No businesses or services were located on that exit, nor were any advertised prior to the exit, and no street lights could be seen from the interstate. Just beyond Exit 322, an empty police car was parked in the median with its emergency lights activated to give the appearance of an active check lane, although no drug check lane was actually in operation.

Exit 322 leads to Tallgrass Road. At the bottom of the exit ramp is a stop sign. If a driver turns north on the road, there is a private drive. If the driver turns south, there is a gravel road. Trooper Phillips parked his car on the west edge of Tallgrass Road with his lights off. Around 12:35 a.m., he observed a Ford Focus come down the exit ramp off Interstate 70. Although he saw its brake lights appear, the car did not stop at the stop sign. Trooper Phillips turned on his headlights and pursued the vehicle south on Tallgrass Road. As he got closer, he activated his emergency lights, but the car proceeded at a fairly quick speed. At the end of Tallgrass Road, the car turned left onto Hendricks Creek Road and continued to proceed more than a quarter mile east before stopping. Trooper Phillips followed the car until the driver finally pulled over.

Trooper Phillips approached the car from the driver's side, and the second officer approached from the passenger's side. Immediately, Phillips noticed the driver's and passenger's eyes were bloodshot. He explained that he had stopped them because they failed to stop at the stop sign. The driver responded that he had to urinate urgently. Although he did not smell alcohol, Trooper Phillips asked if the men had been drinking, to which they responded "no." The men explained that they were driving home from Hays where one of them had family.

Phillips requested a driver's license. The driver identified himself as Preston Gardenhire. He explained that he left his driver's license at home, but provided his personal information so that Phillips could check for his driver's license. The passenger immediately volunteered his driver's license, identifying him as Tony Purvis. Phillips then requested the car rental agreement. As the men searched for the agreement, Phillips returned to his patrol car to run a license and background check, which confirmed that both men had valid driver's licenses and no criminal history or outstanding warrants.

Phillips decided to issue a warning for the stop sign violation. However, he noted several facts that caused him to suspect the men were engaged in drug trafficking or drug use: they exited the interstate onto a desolate road where no services were located or advertised, immediately after seeing signs for a drug check lane; the men's eyes were bloodshot, which in his experience was a potential sign of marijuana use; the car was messy, with a lived-in appearance, even though it was a recent rental; a can of air freshener lay on the passenger floorboard and a cologne bottle near the driver's door, although he did not smell the odor of air freshener; and, the driver stated he needed to urinate urgently, yet drove to the end of a desolate gravel road and drove more than a quarter mile east down another road before stopping, despite the Trooper's emergency lights being activated. Before leaving his patrol car, Trooper Phillips decided to ask the men for consent to search the vehicle, but regardless of their responses, he decided he would perform a drug dog sniff.

Phillips returned to the car and asked for the rental agreement. As he approached the car a second time, he smelled burnt marijuana.[1] Phillips reviewed the agreement and noticed that it

---

[1]On cross-examination, defense counsel noted that Trooper Phillips did not record in the police narrative that he had detected "burnt marijuana," only that he smelled the "odor of marijuana."

had been rented to Purvis, but Gardenhire's name did not appear on the agreement. The car had

been rented on October 2, and was scheduled to be returned October 5. As Phillips reviewed the

agreement, Purvis volunteered that he was in a hurry to return home to his son and girlfriend

because they were recently in a car accident and had been hospitalized. Phillips returned all

paperwork to both men and explained that he was going to give them a warning, but advised that

they should be sure to stop at all stop signs in the future. At this point, the car's brake lights can

be seen on the video recording, as the men ask if they can pull up and use the bathroom. Phillips

responded that would be fine. At this point, the stop had lasted approximately twelve and a half

minutes.

Then Phillips interjected, "Hey, before you go, you guys got anything illegal in here?"

The men responded in the negative. Phillips then asked permission to search. Purvis stated,

"That won't be necessary," and again explained that he was in a hurry to see his girlfriend.

Phillips explained that he was going to run his drug dog around the car, and directed the driver to

place the car in park and both occupants to exit the vehicle. As the men exited the car, the

officers performed a patdown search and directed them stand in front of the car. Phillips testified

that even if Gardenhire had requested to leave the scene, he would not have been allowed to

leave in the car.

Phillips prepared Cliff for the search by focusing his attention on the car. He then took

Cliff's leash in hand. As Cliff sniffed at the trunk, Phillips dropped the leash to allow him to

work unhindered. The team proceeded counterclockwise around the car. Cliff followed Phillips

and repeatedly jumped onto the side of the car to sniff higher. From the video, Phillips can be

seen raising his hand as the team approaches the driver's side door, but it is unclear from the

angle of the video whether his hand came into contact with the side of the car. As Cliff approached the driver's side door, he again jumped up and then leapt through the driver's open window. Phillips testified that at the time Cliff jumped through the window, he could smell the odor of raw marijuana emanating through the window. Inside the car, Cliff indicated to the trunk of the vehicle by sitting on the back seat with his nose pointed to the seam between the seat and the trunk. Phillips ordered Cliff out of the car and they proceeded toward the trunk. At the trunk, Cliff jumped up and placed his paws on the trunk. Phillips then called Cliff back to the patrol car.

At the suppression hearing, Phillips testified that he has been a canine handler for five years and has worked with Cliff for two years; they performed nearly 1,000 sniffs together and Phillips is well-attuned to Cliff's behavior patterns. Cliff was certified at the time of the events in this case. Phillips explained that, when performing a drug dog sniff, he generally walks backward and will place the back of his hand near the car to demonstrate where Cliff should sniff. However, he does not let his hand come into contact with the car's surface because he does not want his personal odor on the car. Cliff will "alert" to the presence of an odor by slowing down and sniffing longer and more intensely. He will "indicate" to the presence of a substance by sitting down to indicate he has identified the source of the odor. Although Cliff alerted to the trunk of the vehicle, he did not indicate to the trunk until he was inside the vehicle. Nevertheless, Phillips directed him to finish sniffing outside of the car and, as Cliff proceeded to the trunk, he again alerted to the trunk.

Based on Cliff's alert to the trunk, his indication inside the vehicle, and his second alert to the trunk, as well as Phillip's own detection of raw marijuana, Phillips decided to search the

trunk.  At this point, little more than fifteen minutes had passed.  Cliff was placed in the patrol car, and Phillips grabbed the keys from the ignition and opened the trunk where he found large square packages wrapped in black trash bags.  Phillips again smelled the odor of raw marijuana.  The Troopers immediately arrested both men.  The officers performed a thorough search of the vehicle, discovering a loaded Tarus .357 magnum revolver under the driver's seat and a Tarus 9 millimeter handgun in the glove compartment.  No burnt marijuana or indicia of drug use was found inside the passenger compartment.

Gardenhire also testified at the suppression hearing.  He explained that he was exiting the interstate to use a restroom and get some fresh air.  He and Purvis decided to exit at Tallgrass Road because they noticed there was a traffic stop ahead, which they suspected would involve a waiting line, and defendant had needed to relieve himself for some time.  He testified that he came to a complete stop at the stop sign before turning, and he stopped immediately upon seeing the emergency lights behind him.  As Trooper Phillips issued the warning ticket, defendant placed the car into gear and attempted to leave.  However, he was directed to put the car in park and exit the vehicle.  At this time, he did not feel free to leave.

Defendant was subsequently charged with possessing with the intent to distribute less than 50 kilograms of a mixture containing marijuana, and possessing a firearm in furtherance of a drug trafficking crime.  The Indictment also contains a forfeiture count.

## II.  Motion to Suppress

Defendant challenges the lawfulness of the initial stop, the length of the detention, and the search of the vehicle.  The government contends defendant lacks standing to challenge the search of the vehicle; nonetheless, the stop, detention, and search were lawful.

## A.      Initial Stop

Under the Fourth Amendment, a traffic stop is a "seizure," which is reasonable only if (1) the officer's action was "justified at its inception," and (2) the detention was "reasonably related in scope to the circumstances which justified the interference in the first place."[2]  Before stopping an automobile, an officer must have a "reasonable articulable suspicion that a particular motorist has violated any of the traffic . . . regulations of the jurisdiction."[3]  Reasonable suspicion may be supported by an "objectively reasonable" good faith belief even if premised on factual error.[4]  Furthermore, "reasonable suspicion may rely on information less reliable than that required to show probable cause . . . and it need not be correct."[5]

Here, Trooper Phillips testified that he watched defendant proceed through a stop sign without coming to a complete stop.  K.S.A. § 8-1528(b) provides that "every driver of a vehicle approaching a stop sign shall stop at a clearly marked stop line, but if none, . . . then at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering it."  The Court finds Trooper Phillips' testimony credible. He testified that he watched the brake lights appear, but the driver proceeded through the intersection without stopping.  Having developed a reasonable suspicion that K.S.A. § 8-1528(b) had been violated, Trooper Phillips was justified in stopping the car.

## B.      Length of Detention

---

[2]*Terry v. Ohio*, 392 U.S. 1, 19-20 (1968).

[3]*United States v. White*, 584 F.3d 935, 945 (10th Cir. 2009) (quoting *United States v. Winder*, 557 F.3d 1129, 1134 (10th Cir.), *cert. denied*, —U.S.—, 129 S. Ct. 2881 (2009)).

[4]*United States v. Vercher*, 358 F.3d 1257, 1261 (10th Cir. 2004).

[5]*Id.* (internal citations omitted).

Even if the initial stop of defendant's car was justified, the detention must be "reasonably related in scope to the circumstances which justified the interference in the first place."[6] "Generally, an investigative detention must last no longer than is necessary to effectuate the purpose of the stop."[7] However, in the course of a routine traffic stop, an officer may "request vehicle registration and a driver's license, run a computer check, ask about travel plans and vehicle ownership, and issue a citation."[8] An officer may also run a simultaneous check of the detainees' criminal history.[9] A stop typically ends at the time the officer returns the driver's license and vehicle registration and issues a warning.[10] "[F]urther detention for purposes of questioning unrelated to the initial traffic stop is permissible if the officer has an objectively reasonable and articulable suspicion that illegal activity has occurred or is occurring,"[11] In determining whether reasonable suspicion has developed, the court looks to the totality of the circumstances and inquires into whether the officer had an objective and particularized basis for his suspicions.[12]

Defendant argues that, after Trooper Phillips issued the warning, the continued detention

---

[6]*United States v. Williams*, 271 F.3d 1262, 1266 (10th Cir. 2001), *cert. denied*, 535 U.S. 1019 (2002).

[7]*United States v. Cervine*, 347 F.3d 865, 870–71 (10th Cir. 2003) (internal quotation omitted).

[8]*United States v. Zubia-Melendez*, 263 F.3d 1155, 1161 (10th Cir. 2001); *see United States v. Lyons*, 510 F.3d 1225, 1236 (10th Cir. 2007) ("A seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission.") (quoting *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)).

[9]*United States v. McRae*, 81 F.3d 1528, 1535 n.6 (10th Cir. 1996).

[10]*United States v. White*, 584 F.3d 935, 949 (10th Cir. 2009).

[11]*United States v. Martinez*, 230 F. App'x 808, 812 (10th Cir. 2007) (citing *United States v. Zumbia-Melendez*, 263 F.3d 1155, 1161 (10th Cir. 2001)).

[12]*White*, 584 F.3d at 949–50.

was not consensual and was not supported by reasonable suspicion. The government provides two justifications for the investigatory detention: (1) there was reasonable suspicion the car was being used to transport illegal narcotics, and (2) Trooper Phillips had probable cause to arrest defendant for failing to produce a valid driver's license.[13]

Although the stop was initiated on the basis of defendant's failure to stop at a stop sign, the Court finds that, during the stop, Trooper Phillips developed reasonable suspicion to believe the occupants were engaged in illegal activity. At the suppression hearing, Trooper Phillips testified to multiple facts observed the first time he approached the car which, when viewed collectively and in light of his training and experience, created a reasonable suspicion of drug use or drug trafficking, justifying a further investigatory detention.

The following facts were noted by Phillips. Defendant's decision to exit onto a rural road where no services were advertised and no lights were visible, after midnight and immediately after passing signs for a drug check lane, gave the appearance of avoiding the drug check lane.[14] Phillips considered it suspicious that, upon approaching the driver, the driver immediately stated that he urgently needed to urinate, yet had driven down an unlit, gravel road and turned onto a cross road, driving more than a quarter mile east, before stopping.[15] Gardenhire's conduct was inconsistent with his alleged purpose. Furthermore, the driver appeared reluctant to stop after

---

[13]*See* K.S.A. §§ 8-244 (requiring drivers to have their driver's licenses in "immediate possession" to be produced upon demand of an officer), 22-2401(d) (permitting an officer to make a warrantless arrest for a crime committed in his or her view).

[14]*See United States v. Klinginsmith*, 25 F.3d 1507, 1509–10 (10th Cir. 1994); *United States v. Lambert*, 351 F. Supp. 2d 1154, 1161–62 (D. Kan. 2004) (holding that highway patrol trooper had reasonable suspicion for investigatory detention where, in addition to other facts, it was reasonable to infer that defendant took highway exit to avoid what he believed was drug check lane).

[15]*See White*, 584 F.3d 935, 951 (10th Cir. 2009) ("implausible travel plans can form a basis for reasonable suspicion") (quoting *United States v. Contreras*, 506 F.3d 1031, 1036 (10th Cir. 2007)).

the patrol car's emergency lights were activated, turning onto another road before pulling over. The littered and lived-in appearance of the car was indicative of long-distance travel without many stops, which is common in drug transportation. In a rental car, accumulated litter is even more significant because it accumulated in a shorter period of time. Phillips testified that cans of air freshener are not generally kept in rental cars unless the occupants intend to mask a specific smell. In his experience, bloodshot eyes are indicative of a tired driver, alcohol consumption, or marijuana use, yet he did not smell alcohol in the car. He noticed a single, visible hand print on the trunk of the car, which indicated the trunk had been opened only once during the time it had been in their possession. In his experience, a single hand print was indicative of drug transport. Furthermore, on his second approach with the men's paperwork, Trooper Phillips detected the smell of burnt marijuana, an odor indicative of drug possession.

Under the totality of the circumstances, these facts justified an investigative detention. Trooper Phillips' decision to detain the men, after returning their paperwork so that he could run his drug dog around the car, was supported by reasonable suspicion that they were engaged in illegal drug activity.[16] Trooper Phillips testified that drug dog Cliff was in his patrol car and could be deployed immediately, without making the occupants wait. The Court finds the length of the detention was reasonable, lasting little more than fifteen minutes by the time the drugs were discovered. Because the Court finds reasonable suspicion of criminal activity had developed, the Court does not address the government's alternative basis for the detention.

### C.    Standing to Challenge the Search

---

[16]*Id.* at 954 (holding that investigative detention did not escalate into an arrest when trooper returned defendants' paperwork and directed them to drive to the KDOT office to expedite a drug dog sniff, which the court found was "reasonably related in scope to detaining [defendants] until the trooper was able to confirm or dispel his suspicions that Defendants were involved in ongoing criminal activity.").

Defendant also challenges the search of the rental car. The government counters that, as a non-owner and non-registered driver, Gardenhire lacks standing. Because Fourth Amendment rights are personal, defendant bears the burden of showing he had a reasonable expectation of privacy in the area searched before he may challenge the search itself.[17] To determine whether defendant's privacy rights are protected by the Fourth Amendment, the court considers "[1] whether the individual manifested a subjective expectation of privacy in the area searched and [2] whether society is prepared to recognize that expectation as objectively reasonable."[18]

To demonstrate a reasonable expectation, defendant must show he had a "'legitimate possessory interest in or [a] lawful control over the car.'"[19] The court considers the following factors relevant to this determination:

> (1) whether the defendant asserted ownership over the items seized from the vehicle; (2) whether the defendant testified to his expectation of privacy at the suppression hearing; and (3) whether the defendant presented any testimony at the suppression hearing that he had a legitimate possessory interest in the vehicle.[20]

"Where the proponent of a motion to suppress is the car's driver but not the registered owner, mere possession of the car and its keys does not suffice to establish a legitimate possessory interest."[21] At a minimum, defendant must establish that "he gained possession from the owner

---

[17]*United States v. Johnson*, 584 F.3d 995, 998 (10th Cir. 2009).

[18]*United States v. Allen*, 235 F.3d 482, 489 (10th Cir. 2000) (internal quotation omitted).

[19]*United States v. Valdez Hocker*, 333 F.3d 1206, 1209 (10th Cir. 2003) (quoting *Allen*, 235 F.3d at 489)) (alteration in original).

[20]*Id.* (quoting *Allen*, 235 F.3d at 489).

[21]*Id.* (citing *Allen*, 235 F.3d at 489; *United States v. Martinez*, 983 F.2d 968, 973 (10th Cir. 1992)).

or someone with authority to grant possession."[22]

In *United States v. Obregon*,[23] the Tenth Circuit upheld the district court's finding that a driver, the sole occupant and person in control of the rental car, lacked standing to challenge the search of the car, in part, because even though he had permission from the renter to drive the car, "[he] was not named in the rental agreement or any other documents, either as the renter or as an authorized driver," and no arrangement had been made with the rental company to allow him to drive the car legitimately.[24] Furthermore, the Tenth Circuit has held that mere possession of the car is not enough to establish standing.[25] In *United States v. Jefferson*,[26] a non-owner driver was found to lack standing to challenge the search of a car when the lawful owner of the car was present as a passenger at the time it was stopped and did not object to the search of the car.[27] Therefore, he had not transferred his possessory interest in the car to the driver.[28]

Here, defendant expressed neither a subjective nor an objective expectation of privacy in the car. He did not claim ownership of the contraband seized from the trunk. Furthermore, he did not explicitly testify to his privacy expectation in the car when he took the stand at the suppression hearing. Trooper Phillips testified that the car was rented to Purvis and defendant's

---

[22]*Id.* (quoting *United States v. Arango*, 912 F.2d 441, 445 (10th Cir. 1990)).

[23]748 F.2d 1371 (10th Cir. 1984).

[24]*Id.* at 1374–75 (quoting district court opinion); *see also United States v. Roper*, 918 F.2d 885, 887–88 (10th Cir. 1990) (neither driver nor passenger was listed on rental contract).

[25]*Valdez Hocker*, 333 F.3d at 1209.

[26]925 F.2d 1242 (10th Cir. 1991).

[27]*Id.* at 1249–51.

[28]*Id.*; *United States v. Salas*, 248 F. App'x 906, 909 n.4 (10th Cir. 2007) ("when the owner of a vehicle is present, a non-owner driver of the vehicle, like Mr. Salas, has no standing to challenge the constitutionality of a search of the vehicle.").

name did not appear on the rental agreement, showing the rental company authorized Purvis to operate the car, not defendant.  When Trooper Phillips requested permission to search the car, Purvis denied consent, showing that Purvis had a subjective expectation of privacy in the car and retained his possessory interest in it.  In contrast, defendant did not respond to the trooper's request for permission to search.

Defendant did not express a subjective expectation of privacy in the rental car and failed to demonstrate that he had lawful possession from anyone with authority to grant it.  Purvis, who was present in the rental car, was the lawful possessor of the car, but lacked authority to grant defendant permission to operate the car.  Therefore, defendant lacks standing to challenge the search of the vehicle.

An occupant of a car who lacks standing to challenge the search directly has standing to challenge the initial stop, his own seizure, and any evidence derived from that seizure.[29]  A defendant "must first establish that the detention did violate his Fourth Amendment rights."[30]  Then, he must show a factual nexus, or "but for" causation, showing that "the evidence sought to be suppressed is a product of *his* or *her* unlawful detention."[31]  "At a minimum, a defendant must adduce evidence at the suppression hearing showing the evidence sought to be suppressed would not have come to light but for the government's unconstitutional conduct."[32]  In showing a factual nexus, defendant must put on evidence to demonstrate that, had he "requested permission

[29]*Brendlin v. California*, 551 U.S. 249, 257–58 (2007) (discussing a passenger).

[30]*United States v. Nava-Ramirez*, 210 F.3d 1128, 1131 (10th Cir.), *cert. denied*, 531 U.S. 887 (2000).

[31]*United States v. DeLuca*, 269 F.3d 1128, 1134–35 (10th Cir. 2001) (emphasis added).

[32]*Nava-Ramirez*, 210 F.3d at 1131.

or otherwise attempted to depart the scene, he would have been able to leave in [the owner's] car."[33]

The Court has determined that the detention in this case was lawful. Even assuming the detention violated defendant's Fourth Amendment rights, Trooper Phillips testified that, had defendant requested permission to leave, Phillips would not have allowed him to leave with the car, even if Purvis had given such permission. Thus, defendant has not shown the evidence discovered in the trunk was derived from a violation of *his* own Fourth Amendment rights.

**D.      Search of the Vehicle**

Defendant argues Trooper Phillips did not have probable cause either to search the interior of the car or to allow Cliff to enter the car. Assuming, *arguendo*, defendant has standing to challenge the search, the Court finds the search was supported by probable cause in this case.

"Probable cause to search a vehicle is established if, under the totality of the circumstances, there is a fair probability that the car contains contraband or evidence."[34] The Tenth Circuit has held that if an officer smells the odor of burnt marijuana, but lacks any other corroborating evidence that the car contains evidence of drug crimes, he has probable cause to search the passenger compartment only.[35] On the other hand, when an officer detects the "overpowering smell of raw marijuana, there is a fair probability that the car is being used to transport large quantities of marijuana and that the marijuana has been secreted in places other

---

[33]*Id.*

[34]*United States v. Chavez*, 534 F.3d 1338, 1344 (10th Cir. 2008).

[35]*United States v. Wald*, 216 F.3d 1222, 1226 (10th Cir. 2000); *United States v. Downs*, 151 F.3d 1301, 1303 (10th Cir. 1998); *United States v. Nielsen*, 9 F.3d 1487, 1491 (10th Cir. 1993).

than the passenger compartment."[36]  In such circumstances, a search of the trunk is permitted.[37]

Furthermore, a drug dog's alert to the presence of drugs is independently sufficient to establish

probable cause to search the entire car, including the trunk.[38]

Here, Trooper Phillips testified that, at the time he approached the car to return the

occupants' paperwork and issue a warning, he smelled the odor of burnt marijuana.  At this

point, he had probable cause to search the passenger compartment.  Thus, police service dog

Cliff was permitted to enter the passenger compartment during his search.[39]  While inside the

passenger compartment, Cliff gave a positive indication to the presence of drugs in the trunk

when he sat on the back seat of the car and pointed his nose at the seam between the seat and the

trunk.  This provided probable cause for Trooper Phillips to search the entire vehicle, including

the trunk.  In addition, Phillips testified that when he passed the driver's open window during the

drug dog sniff, he smelled the odor of raw marijuana.  Under the totality of the circumstances,

these facts, in addition to those establishing reasonable suspicion, gave Phillips probable cause to

search the entire car, including the trunk and all areas where evidence of drug crimes might be

---

[36]*Downs*, 151 F.3d at 1303; *see United States v. Vasquez-Castillo*, 258 F.3d 1207, 1213 (10th Cir. 2001) (odor of raw marijuana).

[37]*Downs*, 151 F.3d at 1303; *Wald*, 216 F.3d 1228; *see United States v. Arnulfo-Sanchez*, 71 F. App'x 35, 39 & n.6 (10th Cir. 2003).

[38]*United States v. Parada*, 577 F.3d 1275, 1282 (10th Cir. 2009) (drug dog alert); *United States v. Stewart*, 473 F.3d 1265, 1270 (10th Cir. 2007) (drug dog alert).

[39]*See United States v. Patterson*, 65 F.3d 68, 71 (7th Cir. 1995) (holding that officer's deployment of a drug dog on a vehicle after the lawful arrest of the driver was a lawful part of the search-incident-to-arrest); *United States v. Thomas*, 787 F. Supp. 663, 684 (E.D. Tex. 1992) (holding that use of dog to search inside of vehicle under the automobile exception was valid as "he acted as a mere extension of the officers' sensory faculties").

secreted.[40]  Defendant's motion to suppress on the basis of the search is denied.

## III.    Motion for Bill of Particulars

Defendant moves for a bill of particulars, arguing that there are no facts in the Indictment showing (1) what acts or omissions constitute "possession" of the contraband under Count 1, or (2) what acts or omissions establish that defendant "knowingly" and "intentionally" "possessed" a firearm "in furtherance of" a drug trafficking offense.  Defendant states that he is merely requesting the government's theory of the case so that he may adequately prepare his defense. The government states that defendant has received full discovery in this case from the earliest stages.

"The purpose of a bill of particulars is to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense, to minimize surprise at trial, and to enable him to plead double jeopardy in the event of a later prosecution for the same offense."[41] If the charges in the indictment track the statute, listing the elements of each offense with sufficient detail to apprise defendant of the charges and permit him to prepare for trial, a bill of particulars is unnecessary.[42]  "The defendant is not entitled to notice of all of the evidence the government intends to produce, but only the theory of the government's case."[43]  "An indictment need not go further and allege in detail the factual proof that will be relied upon to support the

---

[40]*United States v. Ross*, 456 U.S. 798, 824, 825 (1982) ("If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search.").

[41]*United States v. Dunn*, 841 F.2d 1026, 1029 (10th Cir. 1988) (quoting *United States v. Cole*, 755 F.2d 748, 760 (11th Cir. 1985)).

[42]*United States v. Ivy*, 83 F.3d 1266, 1281 (10th Cir. 1996)

[43]*Id.* (quoting *United States v. Levine*, 983 F.2d 165, 167 (10th Cir. 1992)) (alterations omitted).

charges."[44]  "[A] bill of particulars is not intended to serve as a discovery device or to compel the government's disclosure of the factual proof planned for trial.  Nor is it a way to require the government's explanation of the legal theories expected at trial."[45]  When defendant has access to evidence, a bill of particulars should not be used to gather the government's evidentiary detail.[46]

The sufficiency of an indictment is generally held to minimal constitutional standards and is "judged by practical rather than technical considerations."[47]  When reviewing a motion for bill of particulars, the Court should consider "whether the defendant has: (1) a meaningful opportunity to prepare his or her defense, (2) assurances against unfair surprise to the defendant at trial, and (3) protection from double jeopardy dangers."[48]  "Unless the request for the bill of particulars shows, on its face, that failure to grant the request would result in" a violation of one of the above-three protections, "defendant has the burden of showing [by brief, affidavit or otherwise] that his or her request meets one of the three criteria."[49]  The district court has broad discretion in deciding a motion for bill of particulars.[50]

---

[44]*Dunn*, 841 F.2d at 1029 (10th Cir. 1988) (internal quotation marks omitted).

[45]*United States v. Villota-Gomez*, 994 F. Supp. 1322, 1335 (D. Kan. 1998) (citing *Dunn*, 841 F.2d at 1029; *United States v. Gabriel*, 715 F.2d 1447, 1449 (10th Cir. 1983)).

[46]*United States v. Barbieri*, 614 F.2d 715, 719–20 (10th Cir. 1980).

[47]*Villota-Gomez*, 994 F. Supp. at 1335 (citing *United States v. Edmonson*, 962 F.2d 1535, 1541 (10th Cir. 1992) (internal quotation marks omitted).

[48]*United States v. Franklin*, No. 06-20176-JWL, 2007 WL 2155664, at *1 (D. Kan. July 24, 2007) (citing *Gabriel*, 715 F.2d at 1449).

[49]*United States v. Cooper*, 283 F. Supp. 2d 1215, 1239 (D. Kan. 2003) (quoting *United States v. Anderson*, 31 F. Supp. 2d 933, 938 (D. Kan. 1998)).

[50]*United States v. Shepard*, 188 F.R.D. 605, 609 (D. Kan. 1999) (citing *Edmonson*, 962 F.2d at 1541).

Defendant has not met his burden of showing that one of the above-three protections afforded by a bill of particulars is necessary in this case, in light of the present Indictment. Counts 1 and 2 track the statutory language and include sufficient factual detail to enable him to prepare his defense, avoid surprise at trial, and protect against double jeopardy in the event of later prosecution. Defendant's request for additional information about the "possession" and "knowledge" elements, seeks more than information about the government's theory of the case; rather, defendant seeks the government's factual proof planned for trial. The government's theory is apparent from the Indictment itself. In light of the government's pretrial briefs, defendant has received more than a bill of particulars already. Defendant's motion is denied.

## IV.     Motion to Dismiss the Indictment

Defendant moves to dismiss the Indictment under Federal Rule of Criminal Procedure 12(b), arguing there is insufficient evidence defendant actually or constructively "possessed" the contraband in the trunk as charged in Count 1, and there is insufficient evidence defendant "possessed" a firearm or that he possessed it "in furtherance of a drug trafficking offense" as charged in Count 2. The government responds that the Indictment is facially sufficient and the inferences that may be drawn from the facts are sufficiently incriminating to allow the case to go to a jury.

Rule 12(b) provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." Under Rule 12(d), if factual issues are involved, "the court must state its essential findings on the record." However, in most circumstances, "the sufficiency of the indictment should be decided solely by the charges

made in the indictment, without regard to the strength or weakness of the government's case."[51]

The Tenth Circuit explained the parameters of Rule 12:

> Rule 12 authorizes the district court to resolve before trial only those motions "that the court can determine *without a trial of the general issue*." Fed. R. Crim. P. 12(b)(2) (emphasis added). In a criminal case, the "general issue" is "defined as evidence relevant to the question of guilt or innocence." Thus, . . . Rule 12 permits pretrial resolution of a motion to dismiss the indictment only when "trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense." If contested facts surrounding the commission of the offense would be of *any* assistance in determining the validity of the motion, Rule 12 doesn't authorize its disposition before trial.[52]

In limited circumstances, the court may consider evidence outside the indictment on a motion to dismiss where "[1] the operative facts are undisputed and [2] the government fails to object to the district court's consideration of those undisputed facts, and [3] the district court can determine from them that, *as a matter of law*, the government is incapable of proving its case beyond a reasonable doubt."[53] "To warrant dismissal, it must be clear from the parties' *agreed* representations about the facts surrounding the commission of the alleged offense that a trial of the general issue would serve no purpose."[54]

Defendant cites *United States v. Brown*[55] and *United States v. Risk*.[56] But this case is

---

[51]*United States v. Brown*, 925 F.2d 1301, 1304 (10th Cir. 1991).

[52]*United States v. Pope*, —F.3d—, 2010 WL 2872482, at *3 (10th Cir. 2010) (emphasis in original; internal citations omitted).

[53]*Id.* at *4 (quoting *United States v. Hall*, 20 F.3d 1084, 1088 (10th Cir. 1994) (emphasis in original; internal quotation marks omitted).

[54]*Id.* at *5 (emphasis in original).

[55]925 F.2d 1301 (10th Cir. 1991).

[56]843 F.2d 1059 (7th Cir. 1988).

unlike *Brown* or *Risk*, where an essential element of the charge was completely missing in light of undisputed facts. In *Risk*, defendant was charged with failure to file Currency Transaction Reports for transactions involving more than $10,000, in violation of 31 U.S.C. §§ 5313 and 5322, but there was no evidence that any single transaction involved over $9,800.[57] In *Brown*, it was undisputed that the alleged stole property was actually "intellectual property," which did not come within the meaning of "goods, wares or merchandise" under the National Stolen Property Act, under which defendant was charged.[58] In both cases, no matter how the facts were construed by the Court, there was no violation of the law as charged in the indictment.

In contrast, the Indictment in this case is facially sufficient and the government objects to the pretrial consideration of evidence beyond its four corners. Furthermore, the government has proffered facts and reasonable inferences to be drawn from those facts that could establish a violation of the statutes underlying the Indictment. Defendant has not demonstrated a complete *absence* of evidence in support of "possession" under either Count. Rather, he disputes the strength or weakness of the government's case, which is not an issue that may be decided under Rule 12(b)(2).[59]

Nevertheless, based on the government's response brief, the elements of "possession" of the contraband and "possession" of a firearm "in furtherance of a drug trafficking offense" can be sufficiently shown to submit this case to a jury. Defendant was driving the car where the drugs and firearms were found; he drove in an evasive manner prior to the traffic stop; the

---

[57] *Risk*, 843 F.2d at 1061–61.

[58] *Brown*, 925 F.2d at 1304, 1309.

[59] Fed. R. Crim. P. 12(b)(2) (". . . that the court can determine without a trial of the general issue").

passenger compartment smelled of burnt and raw marijuana; drugs were located in the trunk; a loaded firearm was found directly beneath the driver's seat where defendant had been sitting; and second firearm was found in the glove compartment directly in front of the passenger. "Whether or not this evidence, standing alone, [is] sufficient to convict, it does not demonstrate, as a matter of law, that [defendant] could not have committed the crime[s] [charged]."[60]  The Court denies defendant's motion to dismiss the Indictment.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's Motion to Suppress Illegally Seized Evidence (Doc. 30), Motion to Dismiss Indictment (Doc. 31), and Motion for Bill of Particulars (Doc. 29) are **denied.**  Defendant's Motion to Join in Codefendant's Motion to Compel Production of Discovery and Any Related Motion (Doc. 32) is **moot.**

**IT IS SO ORDERED.**

Dated: July 30, 2010

                      S/ Julie A. Robinson
                      JULIE A. ROBINSON
                      UNITED STATES DISTRICT JUDGE

---

[60]*United States v. Todd*, 446 F.3d 1062, 1069 (10th Cir. 2006).